**In re Anonymous No. 104 D.B. 90**

Disciplinary Board Docket no. 104 D.B. 90.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KERNS, *Member,* February 12, 1996—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On June 12, 1995, petitioner, [    ], filed a petition for reinstatement. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated February 27, 1991. A hearing on this matter was held on August 31, 1995 before Hearing Committee [    ] comprised of Chairperson [    ], Esquire, and members, [    ], Esquire, and [    ], Esquire. Petitioner was represented by [    ], Esquire. Office of Disciplinary Counsel was represented by [    ], Esquire.

The committee filed its report on November 2, 1995 and recommended that the petition for reinstatement

be granted. This matter was adjudicated by the Disciplinary Board at the meeting of December 7, 1995.

## II. FINDINGS OF FACT

(1) Petitioner was born on October 13, 1928. He resides at [    ]. He is a graduate of [    ] School of Law, Class of 1953. (N.T. 10.)

(2) Petitioner was admitted to the bar on May 1, 1954. From his admission until his disbarment, petitioner was engaged in the general practice of law in [    ] County, Pennsylvania. (N.T. 11.)

(3) Petitioner practiced law in affiliation with his brother, [A], from February 1958 until his brother's death in December 1985. Thereafter, petitioner practiced law with his nephew, [B], and his sons, [C] and [D]. (N.T. 11-12.)

(4) During the years of his practice, [petitioner] was a solicitor for various school districts, municipalities and governmental bodies. Within this capacity he was solicitor for the clerk of courts, the prothonotary and the treasurer's offices in [    ] County. (N.T. 13.)

(5) In 1985, petitioner's brother, [A], died. This circumstance significantly increased petitioner's workload and in 1987, he suffered a slight heart attack which caused him to be off work for approximately three months. In 1988, he had major surgery which required another three-month sabbatical. In 1990, a major lawsuit was filed against him which caused him significant emotional and psychological distress. In 1990, with a lawsuit pending against him, petitioner was faced with two disciplinary complaints relating to his representation of one [E]. After meeting with Disciplinary Counsel on several occasions, [petitioner] indicated his desire to resign from the bar. By order of February 27, 1991,

the Supreme Court accepted such resignation and declared that [petitioner] was "DISBARRED ON CONSENT." (N.T. 14-25.)

(6) Prior to his disbarment, [petitioner] had developed a significant practice in the area of representing black lung claimants. (N.T. 28.) At the time of his disbarment he advised all of his clients and other interested parties that he was no longer able to represent these claimants as a lawyer. (N.T. 35.) There are, however, provisions under the Federal Rules and Regulations concerning black lung claims which permit a layperson to continue to represent a black lung claimant. (N.T. 35-36.) Following his disbarment [petitioner] also notified the Department of Labor representatives who administered the Black Lung Program that he had been disbarred, but that in some cases he would be appearing as a lay representative for the claimants. He also notified opposing counsel of this situation. (N.T. 36.) Thus, since his disbarment, [petitioner] has been involved as a lay representative in administrative hearings and administrative appeals in as many as 50 black lung claims which were pending at the time of his disbarment. (N.T. 37.) In addition, he has taken on approximately 10 new black lung cases as a lay representative since his disbarment. (N.T. 38.) [Petitioner] testified that it has been his experience that few lawyers are willing to take claimants' cases under the Black Lung Program because of the investment in time which is required. (N.T. 38.)

(7) All litigation against [petitioner] arising out of any aspect of his former practice of law has been settled or otherwise concluded. He currently has no pending claims against him. (N.T. 45.)

(8) Since his disbarment, [petitioner] has utilized prior investments, social security, and the sale of some assets

to support himself. (N.T. 46.) In addition, he has received income from the various cases in which he has acted as a lay representative for black lung claimants. (N.T. 46-47.)

(9) The petitioner has compiled with the educational requirements for disbarred attorneys by attending the August 1994 basic practice course at [    ] University. (N.T. 32-34; see attachments to reinstatement questionnaire.)

(10) In addition, during his disbarment [petitioner] subscribed and reviewed periodicals such as *The Fiduciary Review, The Black Lung Reporter, The Atlantic Reporter* and federal supplements. He testified that he has read every case handed down by the United States Supreme Court in the last five years involving the Federal Black Lung Program as well as following cases in the Third and Fourth Circuits regarding such topics. (N.T. 34; see reinstatement questionnaire no. 19.)

(11) Petitioner entered into evidence letters recommending [petitioner's] reinstatement from [F], court administrator for the [    ] Judicial District of Pennsylvania and Attorney [G]. (Exhibits B and C.)

(12) Petitioner also presented the testimony of [H], the Register of Wills and Recorder of Deeds for [    ] County, Pennsylvania. [H] indicated that if [petitioner] is readmitted to the practice of law, he would have no reservation about entrusting a legal matter to him. (N.T. 74.)

(13) Office of Disciplinary Counsel advised the Hearing Committee that they had no one come forward to object to the reinstatement of [petitioner]. (N.T. 76.)

(14) Respondent has a prior record of discipline consisting of a public censure administered in December 1983.

## III. CONCLUSIONS OF LAW

The misconduct for which petitioner was disbarred is not so egregious as to preclude reinstatement.

Petitioner has satisfied his burden by demonstrating through clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor will it be subversive to the interests of the public.

## IV. DISCUSSION

The sole issue before the board is whether petitioner's request for reinstatement to the Pennsylvania Bar should be granted. Determining the correct answer to this question requires a two-step analysis.

The board must initially decide whether the conduct for which petitioner was disbarred was so egregious as to preclude possible reinstatement at this time. Such an inquiry demands an analysis of whether a sufficient amount of time has passed since the misconduct occurred, during which petitioner engaged in a qualitative period of rehabilitation. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). Assuming petitioner's misconduct will not prevent consideration of his current request for reinstatement, the next question is whether petitioner possesses the moral qualifications, competency and learning in the law necessary to merit readmission to the Pennsylvania Bar. It is petitioner's burden to prove, by clear and convincing evidence, that he has the moral qualifications, competency and

learning in the law necessary to resume practice in this Commonwealth, and that his resumption of practice will not be detrimental to the integrity of the bar, nor subversive of the interests of the public. See Rule 218(c)(3)(i), Pa.R.D.E.

The initial point of inquiry when a disbarred attorney seeks reinstatement is whether the conduct which led to disbarment is so patently offensive and contrary to the spirit of the bar that reinstatement is impossible. There are certain acts of misconduct so repellant to the integrity of the bar and opposite to the interests of the public that no amount of time or rehabilitation can cure the injustice that the petitioner's reinstatement would cause. Therefore, when entertaining a petition for readmission, a review of the underlying offense is required as an initial step in determining eligibility for reinstatement. Review of the facts of this case indicates that while petitioner's misconduct was serious, it was not so egregious a breach of trust or repugnant to the integrity of the bar or interests of the public to obviate his reinstatement. Petitioner was disbarred on consent after he discovered that he was the subject of two complaints filed with the Disciplinary Board. The first set of allegations against petitioner concerned his misrepresentations to his client, [E], relative to the status of her pending lawsuit. Petitioner regularly reported to [E] that her case was proceeding on the trial list, when in fact it was not. [E's] case was eventually settled. The second set of allegations against petitioner concerned charges of commingling arising from his handling of [E's] case. Investigation into the matter revealed that petitioner commingled funds of [E's] with his own funds in his fiduciary account and used these

commingled funds for the advancement of costs on various litigation matters. All of the money held by petitioner as a fiduciary was properly accounted for and paid to those persons entitled to the money. Petitioner fully admitted that he engaged in these actions and decided to be disbarred on consent instead of making Office of Disciplinary Counsel go forward with their case against him.

The conclusion that petitioner's misconduct is not so egregious as to preclude his reinstatement at this time is supported by case law. In the case of *In re Anonymous No. 44 D.B. 82*, 24 D.&C.4th 434 (1994), an attorney was disbarred on consent after conversion of client and partnership funds. The board concluded that while this conversion of funds was serious, it was not so egregious as to preclude readmission to the bar after a passage of time during which the attorney rehabilitated herself. In the case of *In re Anonymous No. 24 D.B. 84*, 14 D.&C.4th 235 (1991), an attorney was disbarred on consent following allegations of misuse of client funds and neglect. This attorney was reinstated as the board concluded that the misconduct was not so egregious as to preclude his readmission. In the case of *In re Anonymous No. 67 D.B. 81*, 13 D.&C.4th 652 (1991), an attorney was disbarred for mismanagement, commingling and conversion of funds. After review of the underlying actions, the board determined that the attorney's misconduct was not so repugnant as to obviate his reinstatement.

The second question, in light of the determination that the petitioner's conduct was not so egregious as to avert his reinstatement at this time, is whether a quantitative period of time has elapsed since disbarment, during which petitioner has engaged in qualitative re-

habilitation. Petitioner has not practiced law since 1991, a period of five years. The critical issue is whether petitioner has used this time for participation in meaningful rehabilitation. During petitioner's five-year disbarment he acted as a lay representative for black lung claimants who could not find counsel to represent them. The applicable rules for black lung claims permit representation by a non-attorney. In undertaking this representation petitioner informed all concerned parties that he was no longer an attorney, but a lay representative. Petitioner continued to work on cases he had prior to his disbarment, and he took approximately 10 new cases after disbarment. Petitioner explained that black lung claims take a long time to conclude and many attorneys are not willing to accept such work because no payment for services is rendered until the time of conclusion. While disbarred, petitioner remained active in his church and the alumni associations of his college and law school. Additionally, petitioner admitted his misconduct and testified that he is aware of the actions he must take to avoid further problems. Petitioner testified that he learned to put everything in writing, keep his work load manageable and realize his limitations. (N.T. 26-27.) This evidence leads to the conclusion that petitioner engaged in a qualitative period of rehabilitation during his disbarment.

The next burden for petitioner to overcome in order to be reinstated is compliance with Rule 218, Pa.R.D.E., which mandates that he demonstrate, with clear and convincing evidence, that he has the requisite moral qualifications, competency and learning in the law expected of a Pennsylvania lawyer and that his resumption of practice will not be subversive to the interests of the public nor offensive to the integrity of the bar.

Petitioner presented character testimony from [I], the Clerk of Courts of [ ] County, and [H], the Register of Wills and Recorder of Deeds for [ ] County. These witnesses testified that petitioner had a reputation for honesty and trustworthiness, and they had no reservations about petitioner resuming practice in [ ] County. Petitioner presented the letter of [F], Court Administrator of [ ] County, who stated that she had complete trust in petitioner's handling of legal affairs. [G], an attorney who handles black lung claims in West Virginia and worked with petitioner, wrote a letter attesting to petitioner's competency in handling the claims. None of these references had any doubts concerning petitioner's reinstatement.

Petitioner presented evidence that he attended a three-day basic practice course at [ ] University in August 1994. Petitioner testified that he keeps apprised of trends in the law by reviewing the *ABA Journal, Pennsylvania Law Weekly, Fiduciary Review, Black Lung Reporter, Atlantic Reporter, Federal Supplement,* and *American Trial Lawyer.* Petitioner's work as a lay representative of necessity required use of his legal research and writing skills. Petitioner indicated that if he is reinstated, he would like to continue his black lung cases as well as handle some real estate work. He would like to serve as a legal consultant, but he does not envision a full-time active practice of law in his future.

In light of petitioner's remorse, his satisfaction of the *Keller* requirements, his compliance with the requisites of Rule 218, Pa.R.D.E., and the fact that Office of Disciplinary Counsel has no objection to petitioner's readmission to the Pennsylvania Bar, the board concludes that his reinstatement would not hinder the interests of the public nor jeopardize the integrity of the bar.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, [    ], be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Lieber recused herself.

Board Member Carson did not participate in the December 7, 1995 adjudication.

## ORDER

And now, March 1, 1996, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated February 12, 1996, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.